## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CHARLES JOHNSON,

      Plaintiff,

v.                                Case No: 8:23-cv-2980-CEH-CPT

EXPERT, INC., GOODLEAP, LLC,
EQUIFAX, INC., EXPERIAN
INFORMATION SOLUTIONS, INC.
and TRANS UNION, LLC,

      Defendants.

_____

### ORDER

This matter comes before the Court on Defendant GoodLeap, LLC's Motion to Compel Arbitration and Stay Proceedings (Doc. 30), Plaintiff Charles Johnson's Response in Opposition (Doc. 36), and GoodLeap's Reply (Doc. 38). In this dispute arising from a solar panel contract, GoodLeap seeks to enforce the arbitration provision of a loan agreement that Plaintiff asserts was rescinded.

Upon review and consideration, and being fully advised in the premises, the Court will grant the motion and stay the claims against GoodLeap pending arbitration.

## I.    BACKGROUND

Plaintiff Charles Johnson initiated this putative class action on December 28, 2023. Doc. 1. He explains that he entered into a purported contract with Defendant Expert, Inc., to procure solar panels for his home in January 2023. *Id.* ¶¶ 20-21. Defendant GoodLeap provided financing for the purchase. *Id.* ¶ 8. Plaintiff alleges

that he signed the relevant contracts electronically but was not presented with an E-Sign Consent form. *Id.* ¶ 22.  In April 2023, Plaintiff notified Expert that he intended to rescind the transaction because Expert representatives allegedly misrepresented the capacity and value of the solar system in their sales pitch. *Id.* ¶¶ 23-28.  GoodLeap issued him a refund check the following month that referenced the cancellation of his account. *Id.* ¶ 29.  However, GoodLeap continued to attempt to collect on the loan and caused inaccurate reporting on his credit reports. *Id.* ¶¶ 30-33.  Plaintiff now asserts violations of the Fair Credit Reporting Act ("FCRA") against GoodLeap and credit reporting agencies,[1] *id.* ¶¶ 78-89, and state law causes of action such as breach of contract, fraud, and deceptive trade practices against Expert and GoodLeap. *Id.* ¶¶ 47-81, 90-95.

GoodLeap moves to compel arbitration. Doc. 30.  It asserts that Plaintiff entered into a binding arbitration agreement that was contained in his loan agreement with GoodLeap, which Plaintiff electronically signed on December 13, 2022. *Id.* Plaintiff's electronic initials appear under the arbitration provision, which reads, in relevant part:

> ARBITRATION AGREEMENT.  All claims and disputes arising out of or relating to this Agreement… shall be resolved by binding arbitration on an individual basis.  The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers… YOU HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY

---

[1] In a Notice of Settlement dated April 2, 2024, Plaintiff reported that his claims against these Defendants have settled. Doc. 33.

> RIGHTS TO GO TO COURT AND HAVE A TRIAL IN
> FRONT OF A JURY. FURTHER, UNLESS YOU OPT OUT
> OF ARBITRATION, YOU ALSO AGREE TO WAIVE ANY
> RIGHT TO BRING OR PARTICIPATE IN A CLASS OR
> REPRESENTATIVE ACTION IN COURT OR IN
> ARBITRATION. …

Doc. 30 at 24-25. The arbitration agreement informs borrowers that they may opt out within 15 days of signing the agreement. *Id.* at 25. Plaintiff did not opt out. *Id.* at 4. GoodLeap argues that the arbitration agreement is enforceable under state law contract principles, and that it survives any termination of the loan agreement. *Id.* at 6-8. Moreover, it covers Plaintiff's claims against GoodLeap because they arise out of the loan agreement; in any event, the parties agreed to delegate questions of arbitrability to the arbitrator. *Id.* at 11-12. GoodLeap also seeks to enforce the class action waiver provision of the arbitration provision. *Id.* at 13.

Plaintiff opposes the motion to compel arbitration. Doc. 36. He first argues that the rescission of the solar transaction and loan agreement cancels any arbitration agreement between the parties. *Id.* at 2. In addition, Defendants' failure to provide an E-Sign Consent for the use of electronic signatures for the solar panel purchase agreement and the loan agreement renders all aspects of those agreements, including the arbitration provision, ineffective. *Id.* at 6-8. Plaintiff further contends that the solar panel transaction as a whole is invalid because it was procured by fraud, which renders the arbitration agreement unenforceable because it lacked his consent. *Id.* at 5, 8-10. In the alternative, Plaintiff requests a jury trial and discovery on the issue of arbitration. *Id.* at 3-4, 10.

In reply, Defendant argues that Plaintiff does not challenge the validity of the arbitration agreement itself; he raises challenges only to the solar purchase contract and the entire loan agreement. Doc. 38 at 2-8.  The parties agreed to delegate questions of arbitrability and enforcement of those contracts to the arbitrator, rather than the court. *Id.*

## II.   LEGAL STANDARD

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  The FAA provides that an arbitration provision in a contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA reflects a strong federal policy toward resolving disputed arbitrable issues through arbitration; indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-WFJ-JSS, 2019 WL 5887179, *1 (M.D. Fla. Nov. 12, 2019) ("A strong policy exists in favor of resolving disputes by arbitration.").

The FAA requires a court to compel arbitration "upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state law contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citations and quotation omitted).

## III.   DISCUSSION

### A. An Arbitration Agreement Exists.

The Court first concludes that Plaintiff and GoodLeap entered into an enforceable arbitration agreement.

The presumption in favor of arbitration does not apply to disputes concerning whether an agreement to arbitrate was made. *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014); *see also Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2018) (parties cannot be forced to submit to arbitration if they did not agree to it).   When determining whether the parties agreed to arbitrate, the court employs a "summary judgment-like standard." *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).   Where a genuine dispute of fact exists regarding the making of an arbitration agreement, the court must proceed to a trial on the issue. 9 U.S.C. § 4.   The question of whether an enforceable arbitration agreement exists is decided under state contract law. *First Options of Chicago, Inc. v. Kaplan*, 415 U.S. 938, 945 (1995); *Bazemore*, 827 F.3d at 1330.

However, a challenge to "the contract as a whole, [including] on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced)," is treated differently from a challenge "specifically to the validity of the agreement to arbitrate[.]" *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).   An arbitration provision is severable from the remainder of the contract. *Id.* at 445.   As such, an arbitration provision is enforceable if it is independently valid—even if the

rest of the contract is found to be null and void. *Id.* at 443, 445-46 (rejecting claim that an otherwise-valid arbitration provision should not be enforced because the opposing party claimed the contract as a whole was "illegal and void ab *initio*."); *see also Nitro-Life Technologies, LLC v. Howard*, 568 U.S. 17, 19-22 (2012) (claim that contracts were "void and unenforceable as against state public policy" was for the arbitrator to decide, because "attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved by the arbitrator in the first instance, not by a federal or state court.") (citations and quotations omitted).  Pursuant to *Buckeye* and *Nitro-Life*, a district court must assess whether the arbitration clause itself is enforceable under state law standards, and it must refer to arbitration any challenge to the entire contract, "but not specifically its arbitration provisions[.]" *Buckeye*, 546 U.S. at 445-46.

Accordingly, courts in this Circuit have differentiated between claims that the entire contract is invalid and challenges to the arbitration agreement itself. *See Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 995 (11th Cir. 2012) (claim of fraud in the inducement of entire contract is reserved for arbitrator); *Scott v. EFN Invs., LLC*, 312 F. App'x 254 (11th Cir. 2009) (rejecting argument that rescission of the entire contract meant rescission of the agreement to arbitrate); *Matos v. Coggin Automotive Corp.*, No. 3:16-cv-956, 2016 WL 10789570 (M.D. Fla. Nov. 15, 2016) (same), *report and recommendation adopted by* 2017 WL 6948458 (June 29, 2017); *DePaoli v. Exotic Motorcars & Jewelry, Inc.*, No. 08-80544-CIV, 2008 WL 4279645, *3 (S.D. Fla. Sept. 16,

2008) (same); *Arrasola v. MGP Motor Holdings, LLC*, 172 So.3d 508, 513-14 (Fla. 3d DCA 2015) (same, where plaintiffs claimed they were fraudulently induced to enter into contract and that contract was unconscionable).

Here, Plaintiff argues that the entire solar panel transaction was rescinded when he cancelled it, including the loan agreement that contained the arbitration provision. Doc. 36 at 1-2. He also argues that the entire transaction is void due to Expert's alleged misrepresentations during the sales pitch. *Id.* at 8-10. Finally, Plaintiff claims that his electronic signatures are invalid due to Expert's failure to obtain his written consent to proceed with an electronic signature, which Plaintiff argues is required under federal law. *Id.* at 6-8.[2] But all three of these arguments address the validity of the entire contract, rather than the arbitration agreement itself. Pursuant to *Buckeye* and *Nitro-Life*, an arbitrator must decide Plaintiff's claims that the contract or transaction in its entirety was rescinded or is otherwise void.

---

[2] The Court observes that Plaintiff's broad claim that "no…electronic signature can be effective between the parties" unless the consumer is given an e-sign consent form is not supported by his list of out-of-circuit citations nor by the text of the E-SIGN Act. The Act states that its consent provisions are required only in the following circumstance:

> [I]f a statute, regulation, or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing, the use of an electronic record to provide or make available (whichever is required) such information satisfies the requirement that such information be in writing[.]

15 U.S.C. § 7001(c)(1); *see also* Robert A. Wittie & Jane K. Winn, *Electronic Records and Signatures Under the Federal E-Sign Legislation*, 56 Bus. Law. 293, 299-301, 303-304 (Nov. 2000).

Plaintiff relies on *Cancanon v. Smith Barney, Harris, Upham Co.*, 805 F.2d 998 (11th Cir. 1986), to argue that his claim of fraud in the execution, also known as fraud in the factum, cannot be referred to arbitration. Plaintiff is correct that a true claim of fraud in the execution does not bind the parties to arbitration. *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 994-95 (11th Cir. 2012). The Complaint purports to allege a claim of fraud in the execution against Expert for allegedly misrepresenting that the terms of the sales pitch mirrored the contract Plaintiff was signing. Doc. 1 ¶¶ 55-59. However, the true cause of action Plaintiff is alleging in this claim is fraud in the *inducement*, not fraud in the execution. The Eleventh Circuit explained the distinction between the two in *Solymar*, 672 F.3d at 995. A fraud in the execution claim arises "when a legal instrument executed differs from the one intended for execution," or in circumstances such as forgery, or physical coercion. *Id.* But "[i]f a party understands the nature of the contract they are executing but contends that there has been some material misrepresentation as to the obligations arising thereunder, only a fraud in the inducement claim will lie." *Id.* ("[F]raud in the inducement arises from misrepresentation that leads one to enter a contract with a false impression of the risks, duties, or obligations involved[.]") (quotation omitted).

In *Cancanon*, the plaintiffs, who could not read English, properly alleged a claim of fraud in the execution because they were told they were signing an agreement to open a money market account but actually signed an agreement that allowed the defendant to trade securities on their behalf. 805 F.2d at 999-1000. The *Solymar* court

8

distinguished *Cancanon*'s allegations from those of its own plaintiffs, who alleged that they signed an agreement in reliance on defendants' representations that it comprised just one part of a larger settlement, but the settlement ultimately was not completed. 672 F.3d at 987, 995.  Thus, the *Solymar* court found that the plaintiffs' true claim was "a fraud in the inducement claim, though garbed in the trappings of fraud in the factum[.]" *Id.* at 994-95.  Accordingly, the court held that it must be resolved through arbitration.

Here, too, Plaintiff understood the nature of the contract he was signing: the purchase of solar panels.  He alleges that he relied on verbal representations about its specific terms that were false. *See* Doc. 1 ¶¶ 55-59.  This Court joins two other courts in this District which have addressed similar claims against GoodLeap in concluding that Plaintiff's cause of action is more properly characterized as fraud in the inducement, rather than fraud in the execution. *See Anderson v. Goodleap, LLC*, No. 8:23-cv-2366, 2023 WL 8599789, *3 (M.D. Fla. Dec. 12, 2023) (Jung, J.) (claim that defendant's oral assurances did not match the written contract was fraud in the inducement, not fraud in the factum, and thus was arbitrable); *Puskas v. Goodleap, LLC*, No. 8:23-cv-736, 2023 WL 10947154, *2-3 (M.D. Fla. June 5, 2023) (Merryday, J.) (same); *cf. Waters v. Goodleap, LLC*, No. 6:21-cv-1644, 2022 WL 15504225, *3-4 (M.D. Fla. Jan. 19, 2022) (claim that plaintiff's signature on the loan agreement was forged must be resolved before the court could compel arbitration).  As in *Solymar*, this claim is properly reserved for an arbitrator. 672 F.3d at 995.

Moreover, even if Plaintiff had alleged a true claim of fraud in the execution, the issue would still be reserved for the arbitrator. Plaintiff alleges that the terms of the solar panel purchase contract were misrepresented, not the terms of the loan agreement. He does not allege that fraud in the execution occurred in his signing of the loan agreement. *See Eugene v. GoodLeap, LLC*, No. 23-cv-61463, 2023 WL 6609357, *3 (S.D. Fla. Sept. 22, 2023) ("[A]lthough Plaintiff does argue…that the arbitration agreement was procured by fraud…his arguments are all based on alleged deficiencies with the purchase contract, a wholly distinct contract, and not the loan agreement."); *see also* Doc. 1 ¶¶ 54-59 (alleging fraud in the execution count against Expert only, not GoodLeap).

Plaintiff does not raise any challenges to the validity of the arbitration agreement itself. Upon review, the Court determines that a valid agreement to arbitrate exists.

**B. The Parties Delegated Arbitrability Questions to the Arbitrator.**

Upon determining that a valid agreement to arbitrate exists, courts consider whether the claims fall within the scope of that agreement. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). However, whether a dispute is within the scope of an arbitration agreement is a threshold question of arbitrability. *See Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015). Parties may delegate threshold arbitrability questions to an arbitrator if their agreement does so by "clear and unmistakable evidence." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citation and quotation omitted). "[I]f a valid agreement exists, and if the

agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

Here, the arbitration agreement contains a delegation clause that clearly and unmistakably delegates the question of the agreement's scope to the arbitrator: "The arbitrator shall also decide any issues relating to the making, validity, enforcement, or *scope* of this arbitration agreement, arbitrability… (collectively, 'arbitrability' issues)." Doc. 30 at 24 (emphasis added).  The Eleventh Circuit described similar language as "unambiguous[]" in *Parnell*, 804 F.3d at 1148.  The Court therefore concludes that the question of the arbitration agreement's scope is reserved for the arbitrator. *See Schein*, 586 U.S. at 69.

The availability of class proceedings in arbitration is another type of threshold arbitrability question. *JPay, Inc. v. Kobel*, 904 F.3d 923, 935 (11th Cir. 2018).  Thus, GoodLeap's request to compel arbitration on an individual basis is also reserved for the arbitrator. Doc. 30 at 13.

Because the parties entered into an enforceable arbitration agreement that reserved all questions of arbitrability for the arbitrator, Plaintiff's claims against GoodLeap must be referred to arbitration.  The Court will stay those claims pending arbitration. *See* 9 U.S.C. § 3; *Bender v. A.G. Edwards & Sons*, 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding is referable to

arbitration") (internal quotations omitted).  Accordingly, GoodLeap's motion is due to be granted to the extent it asks the Court to compel arbitration and stay Plaintiff's claims against it.[3]

Accordingly, it is **ORDERED**:

1. Defendant GoodLeap, LLC's Motion to Compel Arbitration and Stay Proceedings (Doc. 30) is **GRANTED**, to the extent that Plaintiff is compelled to arbitrate his claims against GoodLeap, LLC.

1. Plaintiff's claims against GoodLeap, LLC, only, are **STAYED** pending arbitration.  The parties may file a motion to lift the stay, if necessary, once the arbitration proceedings have concluded.

2. Plaintiff's claims against the remaining Defendants remain pending.

**DONE** and **ORDERED** in Tampa, Florida on May 20, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[3] The motion also asks the Court to award GoodLeap prevailing party attorney's fees and costs. Doc. 30 at 14.  The request contains no explanation or support.  It is therefore due to be denied, without prejudice.